# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>COMMANDER AIRCRAFT COMPANY,<br><br>Debtor. | Case No. 02-13804(PJW)<br><br>Chapter 7<br><br>**Objection Deadline: To be Determined by the Court**<br>**Hearing Date: To be Determined by the Court**<br>**(Only if objections filed)** |

**MOTION OF CHAPTER 7 TRUSTEE FOR ENTRY OF ORDERS:
(A) APPROVING BID PROCEDURES; (B) APPROVING THE FORM AND
MANNER OF NOTICE OF (i) BID PROCEDURES HEARING AND (ii) AUCTION AND
SALE HEARING, (C) SCHEDULING SALE HEARING;
(D) AUTHORIZING AND APPROVING THE SALE OF SUBSTANTIALLY ALL
OF THE ESTATE'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND
ENCUMBRANCES AND (E) PROVIDING FOR LIMITED NOTICE PURSUANT TO
FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002(h)**

Alfred T. Giuliano, the Chapter 7 Trustee (the "Chapter 7 Trustee") of the above-captioned debtor (the "Debtor"), hereby moves this Court pursuant to Sections 105(a) and 363(b), (f), (m) of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (a) approving bid procedures; (b) approving the form and manner of notice of (i) bid procedures hearing and (ii) auction and sale hearing; (c) scheduling sale hearing; and (d) authorizing and approving the sale of substantially all of the Estate's assets free and clear of liens, claims and encumbrances and (e) providing for limited notice pursuant to Federal Rules of Bankruptcy Procedure 2002(h) (the "Motion"), and in support thereof respectfully represents and states as follows:

## BACKGROUND

1. On December 27, 2002 (the "Petition Date"), the Debtor commenced a case under Chapter 11 of the Bankruptcy Code, and operated its business and managed its property as debtor-in-possession in accordance with Sections 1107(a) and 1108 of the Bankruptcy Code.

2. The Debtor manufactured, marketed and provided support services for its line of single-engine, high performance Commander aircraft, and also provided consulting, brokerage and refurbishment services for piston aircraft, as well as sales of parts and pre-owned aircraft.

3. On December 10, 2003, the Court confirmed the Debtor's Amended Plan of Reorganization [Docket No. 178]. On June 25, 2004, the Court entered an Order modifying the confirmed Plan. [Docket No. 241].

4. On December 6, 2004, the U.S. Trustee filed a motion to convert the Chapter 11 case to a case under Chapter 7 [Docket No. 310]. On January 14, 2005, an order was entered converting the case to a case under Chapter 7 [Docket No. 320].

5. On January 14, 2005, the Chapter 7 Trustee was appointed as interim Chapter 7 Trustee [Docket No. 321].

6. On February 13, 2005, the Trustee conducted and concluded the Section 341(a) hearing.

## SECURED INDEBTEDNESS AND ASSETS TO BE SOLD

7. The Trustee's investigation has revealed that prior to the Conversion Date, the Debtor had certain secured indebtedness as follows:

   (a) Nyltiak Investments, LLC ("Nyltiak") holds a first priority security interest in essentially all of the Debtor's assets except for aircraft work-in-process, finished aircraft, and all aircraft returned, repossessed, reclaimed or otherwise recovered ("Nyltiak Collateral"). The security interest attached on July 22, 2002 and the claim of Nyltiak is asserted to be in the approximate present amount of $1,352,363 with interest calculated through June 30, 2005 and including attorneys' fees and expenses of

$176,145 which have not yet been approved by the Bankruptcy Court. The Trustee proposes to satisfy this claim at closing except for the portion related to attorneys' fees which shall be satisfied upon approval of the fess by the Bankruptcy Court.

(b) The Oklahoma Tax Commission asserts three secured tax liens in the aggregate amount of $16,415.89. The security interest covers all assets of the Debtor. The tax liens were filed March 6, 2002. The Trustee asserts that this purported lien does not create an enforceable lien in personal property of the Debtor and is otherwise subject to the subordination provisions of 11 U.S.C. §724.

(c) The Internal Revenue Service asserts two secured federal tax liens in the aggregate amount of $393,614.43. The liens cover all assets of the Debtor and were the filed on September 30 and October 25, 2002. The Trustee asserts that this lien is subject only to the security interest of Nyltiak and is subject to the subordination provisions of 11 U.S.C. §724.

(d) The U.S. Department of Labor secured a Consent Judgment on November 26, 2002 enjoining the Debtor from receiving any proceeds from the sale of a certain aircraft, serial number 20045, then under production and included within the current work-In-process unless the Debtor pays to the U.S. Department of Labor $76,841.29.

(e) Sharp Metal Fabricators, Inc., asserts a Mechanics Lien under FAA rules on the amount of $3,938.04 with respect to parts supplied on aircraft serial numbers: N5875N, N6088F and N6071Z. The Trustee does not believe that these aircraft are included within the assets to be sold.

(f) The Trustee is advised that Tiger Aircraft LLC ("Tiger") may be able to assert a security interest in essentially all of the Debtor's assets including aircraft work-in-process, finished aircraft, and all aircraft returned, repossessed, reclaimed or otherwise recovered ("Tiger Collateral"). The claim of Tiger arises out of a transaction between the Debtor and Tiger and is asserted to be in the approximate present amount of $272,000, was acquired on approximately July 9, 2003 and is apparently based upon DIP financing provided to the Debtor during the Chapter 11 proceeding. The Trustee asserts that any indebtedness to Tiger that was authorized by Court Order was forgiven by Tiger under an Instrument of Debt Forgiveness dated as of July 8, 2004. The Trustee disputes that Tiger has any sustainable claim against the Debtor that has been properly filed as a Chapter 11 administrative claim prior to the bar date of April 30, 2005 and that such claim, if filed, would be subject to counter-claims by the Trustee. The lien of Tiger, to the extent that it exists, is subject to the liens of Nyltiak, the Internal Revenue Service and the Oklahoma Tax Commission.

8. The Trustee has determined that the best way to maximize value and to minimize the potential for further loss is through an immediate sale of any and all of the Debtor's assets. The Debtor's assets subject to sale consist of:

(a) All machinery, equipment and inventory, parts, raw materials or any other items, wherever located;

(b) All patents, patent licenses, trademarks, copyrights and intellectual property and general intangibles;

(c) The option which may be exercised up to the date of Closing to acquire any or all aircraft work-in-process without any increase or decrease in the Purchase Price. In the event that the Purchaser elects to acquire airplane serial number 20045, the Purchaser shall assume the liability to the Department of Labor described in paragraph 7(d);

(d) FAA Type Certificate NO A12SO and all amendments, supplements and related FAA approvals or certificates;

(e) All tooling or related items held by the Debtor or in the custody or control of third parties, wherever located;

(f) All accounting, customer lists, production records and other business records, drawings or schematics, subject to the right of the Trustee to have access to such records as provided in the Asset Purchase Agreement;

(g) Debtor's claims, causes of action, rights and remedies in respect of any of the Acquired Assets or Assumed Liabilities, whether arising on, prior to or after the Closing;

(h) Any and all rights and licenses associated with and/or relating to (i) any Patent Rights of Debtor, (ii) works of authorship, including Debtor's Copyrights, trademarks, whether registered or at common law, as well as all pending applications, and (iii) Trade Secrets of Debtor. Such rights shall include all trade names and sales and marketing information.

9. Assets excluded from the sale are as follows:

(a) Bankruptcy created causes of action;

(b) All causes of action including all claims of the Debtor against any officer, directors or professional of any nature whatsoever;

(c) Rights under any and all insurance policies owned by the Debtor, including return premiums and rights to premium refunds.

(d) All cash, cash equivalents and bank accounts.

## **PROPOSED PURCHASE**

10. Commander Premier Aircraft Corporation, a Delaware corporation (the "Purchaser") has agreed to purchase all of the nonexcluded assets of the Debtor, free and clear of liens, claims, encumbrances and interests (other than Permitted Encumbrances) on the terms and conditions set forth in the Asset Purchase Agreement dated June 7, 2005 (the "Purchase Agreement"), a copy of which is attached hereto as Exhibit A, the salient terms and conditions of which are summarized below.

> Purchase Price. The purchase price (the "Purchase Price") under the Purchase Agreement is $1,727,363.
>
> Deposit. The Purchaser has delivered a deposit of $75,000. The deposit will be returned upon termination of the Purchase Agreement or upon closing under the Purchase Agreement will be applied to the purchase price. The Purchaser will forfeit the deposit if the Purchase Agreement is terminated as a result of the Purchaser's material default under the Purchase Agreement, or a material breach of the Purchaser's representations, warranties or covenants.
>
> Expense Reimbursement. If the Purchase Agreement is terminated because of the occurrence of any of the following events, the Purchaser will be reimbursed for its actual out-of-pocket costs and expenses up to $225,000, payable upon termination of the Purchase Agreement. The expense reimbursement fee shall be payable to the Purchaser upon the closing of the sale of any of the acquired assets to a third party in the event that the Purchase Price is not declared the highest and best offer by the Chapter 7 Trustee or the Bankruptcy Court. Such an expense reimbursement shall be payable only out of the proceeds of a sale to a third party and not otherwise be a claim against the Trustee or the Estate.
>
> Purchased Assets. Other than the excluded assets, the Trustee will convey, assign and transfer and the buyer will purchase all of the Trustee's right, title and interest in and to all assets, properties, rights, claims and contracts of the Trustee.
>
> Assumed Liability. The Purchaser will assume no liabilities except for the obligation to the Department of Labor which is assumed only if the Purchaser elects to acquire an unfinished airplane serial no. 20045. The Purchase Agreement specifically provides that the Purchaser will assume no other liabilities.

<blockquote>

Closing and Removal of Purchased Assets. The Purchaser will close immediately after entry of the Sale Order and remove all of the Purchased Assets from their current location in Oklahoma City, OK, on or before June 30, 2005 unless the Purchaser makes other arrangements with the lessor of the space. The Trustee has negotiated an agreement with the landlord to permit any purchaser to remain in the space currently occupied by these assets until August 31, 2005 upon payment by the purchaser to the landlord of $30,000 on or before July 1, 2005, with an option to extend the occupancy for an additional 30 days to expire on September 30, 2005, upon payment of an additional $15,000 on or before August 29, 2005.

</blockquote>

11. The Purchase Agreement is a complex document and contains many additional provisions, terms and additions. The foregoing is merely a summary of certain of the more important provisions and is qualified in its entirety by the Purchase Agreement.

12. So that the auction of the Debtor's assets can proceed in an orderly manner, the Trustee believes that it is in the best interests of the creditors and the Debtor's estate to seek approval of (i) the Bidding Procedures as set forth in the Order attached hereto as Exhibit B (the "Bid Procedures Order") for the Debtor's assets, (ii) the form and manner of notices of (a) the Bid Procedures Hearing, and (b) the Auction and Sale Hearing (substantially in the form set forth in Exhibit C to this Motion, (the "Sale Notice"), and (iii) the Trustee's request for scheduling of the Bid Procedures Hearing and the Sale Hearing and the Sale. Accordingly, the Trustee has filed this Motion seeking such relief.

## **RELIEF REQUESTED**

13. The Trustee requests entry of an order (i) approving the Bidding Procedures and authorizing the Sale, (ii) approving the form and manner of notice of the Bid Procedures Hearing, the Auction and the Sale Hearing, and (iii) scheduling a date for the Sale Hearing, at which the Debtor will seek the entry of an order authorizing the Debtor to sell the Purchased Assets free and clear of all liens, claims, encumbrances, and interests with such liens, claims, encumbrances and interests to attach to the proceeds of Sale on substantially the terms and

conditions set forth in the Purchase Agreement(s) and limiting notice of the Motion in accordance with Federal Rule of Bankruptcy Procedure 2002(h).

## OVERVIEW OF BIDDING PROCEDURES

14. The Trustee seeks approval in implementation of a sales process as follows: (a) the Bidding Procedures, including the expense reimbursement protection, are proposed to be considered at the Bid Procedures Hearing to be scheduled by the Court; (b) following a due diligence period for other interested parties, an auction to be conducted in accordance with the Bidding Procedures if one or more Qualified Bids is timely received as provided in the Bidding Procedures; and (c) the hearing for the Court to consider the sale of the assets to the party determined to be the winning bidder under these procedures proposed to be held at the earliest time practicable after conclusion of the Auction, and at which time the proposed Sale Order would be entered.

15. All bids shall be firm offers without contingencies for financing, due diligence, inspection or corporate approval. The initial bid must be of a value of at least $300,000 more than the initial bid offered by the Purchaser under the Purchase Agreement, as recommended by the Trustee, subject to approval by the Bankruptcy Court. Any subsequent overbid offers must be for a purchase price of at least $50,000 more than the last offer tendered by a Qualified Bidder.

16. All bids shall contain such terms and conditions which are substantially similar or more favorable to the Trustee than the terms and conditions contained in the Purchase Agreement in order to be considered a higher and better offer for the assets to be sold. Each Qualified Bidder must submit a signed, marked up copy of the Purchase Agreement with the proposed modifications and amendments by no later than 4:00 p.m. two (2) days prior to the date of the Auction in order to allow the Trustee to assess and evaluate the differences.

17. The Sale of the Purchased Assets will be on an "as is, where is" basis, without representations or warranties of any kind, nature or description by the Trustee, his agents or estates except as set forth in the Purchase Agreement and, with respect to a Qualified Bidder, to the extent set forth in a Marked Agreement. Each bidder shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Purchased Assets and to conduct any and all due diligence regarding the Purchased Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties and guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets, or the completeness of any information provided in connection with the bidding process, except as expressly stated in a Marked Agreement. Upon consummation of the Sale, all of the Trustee's right, title and interest in the Purchased Assets shall be transferred free and clear of all interests, liens, claims and encumbrances.

18. The Trustee is requesting that the Bankruptcy Court schedule the Sale Hearing for prior to June 27, 2005 in accordance with the Court's schedule. At the Sale Hearing, the Trustee shall present the Successful Bid(s) to the Bankruptcy Court for approval. A bid shall be accepted by the Trustee only when it has been approved by the Bankruptcy Court. Also at the Sale Hearing, the Trustee will seek entry of an order, among other things, authorizing and approving the Sale to the Successful Bidder(s), in accordance with the Bidding Procedures, pursuant to the terms and conditions set forth in the applicable Marked Agreement submitted by the Successful Bidder(s). The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date at the Sale Hearing.

19. The Trustee proposes that following the Sale Hearing at which the Bankruptcy Court approves the sale of the Purchased Assets to one or more Successful Bidders, if any such Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the next highest or otherwise best Qualified Bid(s), as disclosed at the Sale Hearing, shall be deemed to be the Successful Bid(s) and the Trustee may effectuate such sale(s) without further order of the Bankruptcy Court. At or before the Sale Hearing, the Bankruptcy Court, or consistent with the purposes of the Bidding Procedures to obtain the highest or otherwise best offer for the Purchased Assets, the Trustee may impose such other terms and conditions as he may determine to be in the best interests of the Debtor's estate, its creditors and other parties in interest; provided, however, that such additional terms and conditions shall not be inconsistent with the Bid Procedures Order.

**NOTICE OF BIDDING PROCEDURES, AUCTION AND SALE**

20. The Trustee shall serve a copy of this Motion on the following parties by first class mail, postage prepaid, or in the case of certain interested parties who have only supplied an email address, by email: (i) the Office of the United States Trustee for the District of Delaware; (ii) all entities known to have expressed an interest in purchasing some or all of the Debtor's assets since the Petition Date; and (iii) all other parties that have filed a notice of appearance and demand for service of papers in these bankruptcy cases under Bankruptcy Rule 2002 (the "Bidding Procedures Parties").

21. Assuming the Bankruptcy Court enters the proposed Bid Procedures Order, the Trustee shall within two business days serve a copy of this Motion and the Bid Procedures Order upon the following by first class mail, postage prepaid: (i) the Office of the United States Trustee for the District of Delaware; (ii) all entities known to have expressed an interest in purchasing some or all of the Debtor's assets since the Petition Date; (iii) all entities known to

have expressed or asserted any liens, claims or encumbrances in or upon any of the Purchased Assets; (iv) the Internal Revenue Service and any other State or Local taxing authority known to the Debtor as having a potential lien, claim, encumbrance or other interest in all or any part of the Purchased Assets, if any; (v) parties to governmental approvals or permits; (vi) all federal, state and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested in this Motion; and (vii) all other parties that have filed a notice of appearance and demand for service of papers in this bankruptcy case under Bankruptcy Rule 2002 (collectively, the "Auction Notice Parties").

## **SALE NOTICE**

22. Assuming the Bankruptcy Court approves the Bid Procedures Order, within two business days the Trustee shall serve by first class mail, postage prepaid, a Sale Notice substantially in the form annexed to the Motion as Exhibit C upon (i) the Auction Notice Parties; and (ii) all creditors who have filed proofs of claim in this case as of the date of entry of the Bid Procedures Order.

23. The Trustee believes that the foregoing notice procedure to the Bidding Procedures Parties, the Auction Notice Parties and service of the Sale Notice is sufficient to provide effective notice of the Bidding Procedures and the Auction to potentially interested parties in a manner designed to maximize the chance of obtaining the broadest possible participation while minimizing the costs to the estate. Accordingly, the Trustee requests that the Bankruptcy Court find that notice in this manner is sufficient and that no further notice of the Bidding Procedures, Auction or Sale is required.

## **BASIS FOR RELIEF**

24. The Trustee submits that the Bidding Procedures, as described above, are fair, reasonable and the best means to ensure that the Trustee obtains the highest and/or best offer for

the Purchased Assets. To compensate the Purchaser for agreeing to serve as a "stalking horse" whose bid will be subject to higher or better offers, the Trustee seeks approval of the Bid Protections in the form of an expense reimbursement to the Purchaser.

25. The Trustee further submits that approval of the Sale Notice and the request for the scheduling of the Bid Procedures Hearing and the Sale Hearing are appropriate to facilitate the Sale.

26. Section 363 of the Bankruptcy Code provides authority for a trustee and, through the application of Bankruptcy Code section 1107(a), a debtor in possession, "after notice and a hearing, [to] use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). The authority to sell assets conferred upon a debtor by Section 363(b) "includes[s] a sale of substantially all the assets of an estate." *Otto Preminger Films, Ltd. v. Qintex Entertainment, Inc. (In re Qintex Entertainment, Inc)*, 950 F.2d 1492, 1495 (9th Cir. 1991). Further, 11 U.S.C. § 105(a) allows the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [that] title."

27. A bankruptcy court's power to authorize a sale under §363(b) of the Bankruptcy Code is to be exercised at the court's discretion. *In re WPRV-TV*, 983 F.2d 336, 340 (1st Cir. 1993), *New Haven Radio, Inc. v. Meister (In re Martin-Trigona)*, 760 F.2d 1334, 1346 (2d Cir. 1985), *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp)*, 722 F.2d 1063, 1069 (2d Cir. 1983); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390-91 (6th Cir. 1986).

28. Courts in the Third Circuit have authorized a sale of all or substantially all of a debtor's assets pursuant to §363 of the Bankruptcy Code when there is a good business reason for so doing. *See e.g., In re Martin*, 91 F.3d 395 (3d Cir. 1996); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the articulated business

justification test of *Lionel Corp*); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (concluding that the Third Circuit adopted the "sound business purpose" test after the *Abbotts Dairies* decision); *In re Titusville Country Club*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).

29. Courts typically consider the following four factors in determining whether a proposed sale satisfies this standard: (a) whether a sound business justification exists for the sale, (b) whether accurate and reasonable notice of the sale was given to interested parties, (c) whether the sale will produce a fair and reasonable price for the property, and (d) whether the parties have acted in good faith. *See e.g., Titusville Country*, 128 B.R. at 399; *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989). The sale of all or substantially all of the assets of the Estate satisfies these requirements.

30. First, sound business justification exists for the sale and the Trustee's entry into the Purchase Agreement. The Trustee is charged with the liquidation of the Estate's assets. These assets are subject to rapid loss in value if not immediately sold. The Estate has no funds with which to conduct any marketing activities. Delaying a sale could seriously jeopardize the value of the Debtor's business and the remaining value for the Debtor's creditors.

31. Second, an accurate and reasonable notice of the transactions proposed hereby has been provided. The Trustee has served this Motion and notice thereof on (a) all parties who, to the knowledge of the Trustee, presently hold or claim a lien upon or security interest in the Assets, (b) the individuals and entities believed by the Trustee to be potential purchasers, (c) the Office of the United States Trustee for the District of Delaware, and (d) those persons who have requested notice pursuant to Rule 2002 of the Bankruptcy Rules. Under the applicable authorities, such notification to creditors and parties in interest constitutes sufficient notice. *See*

*e.g., Folger Adam Security Inc. v. DeMatteis/MacGregor*, 209 F.3d 252, 265 (3d Cir. 2000) (stating that notice is sufficient if it includes "the time and place of any public sale, the terms and conditions of any private sale, states the time for filing objections and, if real estate is being sold, provides a general description of the property"); *In re WBQ Partnership*, 189 B.R. 97, 103 (Bankr. E.D. Va. 1995) ("notice is sufficient if it includes the terms and conditions of the sale, if it states the time for filing objections, and if the estate is selling real estate, it generally describes the property") (quoting *In re Karpe*, 84 B.R. 926, 930 (Bankr. M.D. Pa. 1988)).

32. Third, the consideration provided for in the Purchase Agreement is fair and reasonable. Under the Purchase Agreement, the Purchaser will pay $1,727,363 at Closing, and assume certain liabilities. The Purchaser has agreed to post a deposit of $75,000, which it would forfeit if there is a material breach of the Purchase Agreement. Under the circumstances, the consideration under the Purchase Agreement represents the highest and best offer received to date for the Assets. The Auction will determine whether any higher or better offer can be obtained.

33. Fourth, courts generally have concluded that parties have acted in good faith with respect to a proposed sale if the consideration is adequate and reasonable and the terms of the sale are fully disclosed. *See, e.g., Abbotts Dairies*, 788 F.2d at 148-50. For the reasons set forth above, these requirements are met here. The Trustee, in the exercise of his business judgment, believes that the terms of the Sale are reasonable (including the consideration provided) and have been fully disclosed.

34. For these reasons, the Trustee submits, in the exercise of his sound business judgment, that his entry into the Purchase Agreement (or an agreement presenting a higher or

better offer), is in the best interests of the Estate and creditors and should be approved, pursuant to §363 of the Bankruptcy Code.

> Sale Free and Clear

35. The Trustee requests authorization to sell the Assets free and clear of liens, claims and encumbrances. Section 363(f) of the Bankruptcy Code authorizes a debtor in possession to sell property under §363(b) "free and clear of any interest in such property of an entity other than the estate" if one of the following conditions is satisfied:

> (1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is subject to a bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).

36. Satisfaction of any one of its five requirements of 11 U.S.C. §365(f) will suffice to approve the sale of the Acquired Assets "free and clear" of liens, claims, encumbrances and interests. *See* 11 U.S.C. §363(f); *Michigan Employment Security Comm'n v. Wolverine Radio Co.* (*In re Wolverine Radio Co.*), 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating Code section 363(f) written in disjunctive; holding that court may approve sale "free and clear" provided at least one of subsections of Bankruptcy Code section 363(f) is met), *cert. dismissed* 503 U.S. 978 (1992); *Citicorp Homeowners Servs., Inc. v. Elliot* (*In re Elliot*), 94 B.R. 343, 345 (E.D. Pa. 1988) (same).

37. Applicable case law provides that a sale of a debtor's assets free and clear of all liens, claims and encumbrances, with such liens, claims and encumbrances attaching to the net

proceeds of the sale, is permissible under §363(f). *See, e.g., Folger Adam Security, Inc. v. DeMatteis/MacGregor*, J.V., 209 F.3d 252, 259 (3d Cir. 2000) ("[T]he holdings of the courts suggest that any interest in property that can be reduced to a money satisfaction constitutes a claim for purposes of §363(f) and, therefore, attaches to the proceeds of the sale."); *In re Elliot,* 94 B.R. 343, 345 (E.D. Pa. 1988); *see also, e.g., In re Goffena*, 175 B.R. 386, 387 (Bankr. D. Mont. 1994; *In re Granite Lumber Co.,* 63 B.R. 466, 471 (Bankr. D. Mont. 1986) ("the real and personal property of the Debtor's estate was sold by the Trustee pursuant to §363(f) of the Code, free and clear of liens, with valid liens to attach to the proceeds of sale.").

38. The Trustee believes that the only entities holding a valid lien on the Purchased Assets are as set forth in paragraph 7. The Trustee submits that to the extent there exist other possible holders of Encumbrances, that one of the subsections of Bankruptcy Code §363(f) applies, and that any such Encumbrance will be adequately protected by having it attach to the net proceeds of the Sale, subject to any claims and defenses the Debtors may possess with respect thereto. Accordingly, the Sale should be approved under Bankruptcy Code §363(f).

39. Lienholders are entitled to exercise their credit bid rights under §363(k) of the Bankruptcy Code. Section 363(k) provides:

> [a]t a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

11 U.S.C. §363(k).

40. Section 363(k) allows the holders of security interests to bid up to the entire amount of their respective claims with respect to the proposed Sale. *In re California Hancock, Inc.*, 88 B.R. 2 26, 229 (9th Cir. BAP 1988). Thus, the amount of the credit bid would not be

15

based on the market value of the collateral but rather the aggregate amount of each secured party's claim. If the right is exercised, the full amount of the lien may be bid, and the creditor is not limited to the secured portion of the claim. *In re Lake County Investments,* 255 B.R. 588, 604 (Bankr. D. Idaho 2000).

41. To the Trustee's knowledge, there are no lienholders other than as described in paragraph 7 above. Accordingly, the Trustee seeks authority to sell the Assets in the manner described above.

The Expense Reimbursement

42. The Trustee also seeks authority to provide the Purchaser with certain protections provided for in the Bid Procedures Order. As is common in such sales, the Purchaser seeks reimbursement of up to $225,000 of its reasonable actual out-of-pocket fees, costs and expenses if the Purchase Agreement is terminated under certain circumstances, such expenses to be paid only out of the proceeds of a sale to another bidder.

43. Courts differ on what the appropriate standard is to evaluate break-up fees. The Third Circuit has rejected the "business judgment" test in the context of a bankruptcy, instead applying the test used to evaluate administrative expenses and considering whether the fee would be in the best interests of the Debtor's estate. *See, e.g., In re O'Brien Envtl Energy, Inc.*, 181 F.3d 527, 537 (3d Cir. 1999) (stating that bidding incentives benefit the estates where they (i) promote "more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited," or (ii) induce a bidder to submit a bid that serves as a floor bid "on which other bidders can rely"); 4 *Collier on Bankruptcy* 363.02[7], at 363-22-23 (15th ed. Rev. 2001)

44. The Trustee submits that the expense reimbursement for which the Trustee is seeking approval is in the best interests of the Estate. Despite the best efforts of the Trustee, no

16

offer for the purchase of the Assets has been received from any party other than the Purchaser which has made it clear that the expense reimbursement is an integral part of its offer.

45. The Purchaser is a group of existing owners of Commander aircraft who have formed together to save this company. The Purchaser is interested in continuing Commander as a going concern at another location to continue to be able to service the hundreds of Commander aircraft that are presently operational. The bidding protections provided to the Purchaser are the only conditions under which the Purchaser was willing to commit the substantial expense of evaluating the assets to be sold and creating a group of owners to participate in the proposed new enterprise.

46. Absent this offer, the Trustee has no alternative but to abandon the assets located in Oklahoma City, Oklahoma. The Estate has no funds to pay for the continued occupancy of the present or any other premises.

WHEREFORE, the Chapter 7 Trustee respectfully requests entry of an order granting the relief requested herein and such other and further relief as is just and proper.

Dated: June 7, 2005

/s/ John V. Fiorella .
John V. Fiorella (DE No. 4330)
Renee C. Ettore (DE No. 4508)
ARCHER & GREINER
A Professional Corporation
1300 N. Market Street, Suite 700
Wilmington, DE 19801
(302) 777-4350 - Telephone
(302) 777-4352 - Facsimile
jfiorella@archerlaw.com - Email

*Counsel for Alfred T. Giuliano as Chapter 7 Trustee*

1299946v1

17